**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MOUNT NITTANY MEDICAL CENTER,** | : | |
| **Plaintiff** | : | **No. 4:11-cv-622** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **NITTANY URGENT CARE, P.C.,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Currently pending before the Court is Plaintiff Mount Nittany Medical Center's ("Mount Nittany") motion for default judgment pursuant to Rule 55(b) of the Federal Rules of Civil Procedure. (Doc. No. 17.) Plaintiff commenced this action by filing a complaint against Nittany Urgent Care ("Nittany") on April 4, 2011, alleging service mark infringement, trade name infringement, false representation of origin, and unfair competition in violation of the Lanham Act and Pennsylvania law. (Doc. No. 1.) Instead of serving the complaint on Nittany, Mount Nittany sent Nittany a demand letter with a copy of the complaint attached as an exhibit, offering to delay serving the complaint if Nittany would agree to change its name within a reasonable period of time. On July 22, 2011, Mount Nittany filed an amended complaint, and on July 25, 2011, Mount Nittany served the complaint, amended complaint, and summons on Nittany. (Doc. Nos. 3, 4.) To date, Nittany has failed to plead or otherwise defend itself in this action. On September 29, 2011, Mount Nittany moved for entry of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (Doc. No. 13.) The clerk of court entered default on September 30, 2011. (Doc. No. 14.) On October 14, 2011, Mount Nittany moved for default judgment. (Doc. No. 17.) In the motion for default judgment, Mount Nittany indicates that it seeks a permanent injunction and an order that Nittany pay Mount Nittany's costs. (Id.) Upon review of Mount Nittany's amended complaint (Doc. No. 3), motion for entry of default (Doc.

No. 17), and supporting affidavits and documents (Doc. Nos. 18, 19, 20) the Court will enter

default judgment against Nittany in the form of a permanent injunction.

## I.    ENTRY OF DEFAULT JUDGMENT

Rule 55(b)(2) of the Federal Rules of Civil Procedure authorizes a district court to enter a

default judgment against a properly served defendant who fails to file a timely responsive

pleading.  Anchorage Assocs. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir.

1990).  "Three factors control whether a default judgment should be granted: (1) prejudice to the

plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and

(3) whether defendant's delay is due to culpable conduct."  Chamberlain v. Giampapa, 210 F.3d

154, 164 (3d Cir. 2000).  However, when a defendant has failed to appear or respond in any

fashion to the complaint, this analysis is necessarily one sided; entry of default judgment is

typically appropriate in such circumstances at least until the defendant comes forward with a

motion to set aside the default judgment pursuant to Rule 55(c).  See Anchorage Assocs., 922

F.2d at 177 n.9.

Here, it is clear that the factors weigh in favor of granting default judgment.  First, if

default is denied, then Mount Nittany will be prejudiced by ongoing infringement by Nittany.

As to the second and third factors, because Nittany has failed to participate in the litigation

process in any way, the Court cannot speculate as to whether Nittany has a litigable defense, or

whether Nittany's default is due to culpable conduct.  Thus, entry of default judgment is

appropriate in this case.

Because default judgment will be entered, "the factual allegations of the complaint,

except those relating to the amount of damages, will be taken as true."  Comdyne I, Inc. v.

Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990) (quoting 10 C. Wright, A. Miller, & M. Kane,

Federal Practice and Procedure § 2688 at 444 (2d ed. 1983)).  The allegations in the amended

complaint, taken as true, are sufficient to support claims for: (1) trademark infringement under

15 U.S.C. § 1141(1); (2) false designation of origin and unfair competition under 15 U.S.C. §

1125(a); and (3) trademark infringement, trade name infringement, and unfair competition under

Pennsylvania common law.  Claims for federal trademark infringement, 15 U.S.C. § 1114, and

federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), are measured by identical standards.  "To

prove either form of Lanham Act violation, a plaintiff must demonstrate that (1) it has a valid

and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to

identify goods or services causes a likelihood of confusion."  A & H Sportswear, Inc. v.

Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000).  Further, "[t]he test for common

law trademark infringement and unfair competition is essentially the same as the test for

infringement and unfair competition under the Lanham Act."  Tillery v. Leonard & Sciolla, LLP,

521 F. Supp. 2d 346, 348 (E.D. Pa. 2007) (citing Fisons Horticulture, Inc. v. Vigoro Indus., 30

F.3d 466, 472 (3d Cir.1994)).

As to the first two elements, "[r]egistration of a mark under the Lanham Act constitutes

prima facie evidence of the mark's validity and its ownership by the registration."  Members

First Fed. Credit Union v. Members 1st Fed. Credit Union, 54 F. Supp. 2d 393, 403 (M.D. Pa.

1999) (citing 15 U.S.C. § 1115).  Here, Mount Nittany has used its trade name and service mark

in commerce since 2004, and its marks are federally registered.  (Doc. No. 3 ¶¶ 9, 11-12.)  Thus,

in the absence of any argument against the validity and ownership of the Mount Nittany marks,

Mount Nittany has established the first two elements of trademark infringement and unfair

competition.

With respect to the third element, the United States Court of Appeals for the Third
Circuit has specified ten factors to be considered in determining whether a defendant's use of its
mark to identify goods or services causes a likelihood of confusion:

> (1) The degree of similarity between the owner's mark and the
> alleged infringing mark; (2) the strength of the owner's mark; (3) the
> price of the goods and other factors indicative of the care and
> attention expected of consumers when making a purchase; (4) the
> length of time the defendant has used the mark with out evidence of
> actual confusion; (5) the intent of the defendant in adopting the mark;
> (6) the evidence of actual confusion; (7) whether the goods, though
> not competing, are marketed through the same channels of trade and
> advertised through the same media; (8) the extent to which the targets
> of the parties' sales efforts are the same; (9) the relationship of the
> goods in the minds of consumers because of the similarity of
> functions; and (10) other facts suggesting that the consuming public
> might expect the prior owner to manufacture a product in the
> defendant's market or that he is likely to expand into that market.

Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 462-63 (3d Cir. 1983).

Here, the Lapp factors weigh in favor of a finding that there is a likelihood of confusion
between Nittany's trade name and service mark, and Mount Nittany's trade name and service
marks.  The marks are substantially similar, with Nittany's mark and Mount Nittany's mark both
including the word "Nittany."  In fact, Mount Nittany alleges that there is actual confusion
between Mount Nittany's business and services and Nittany's business and services.  (Doc. No.
3 ¶ 16.)  According to Plaintiff's amended complaint, Mount Nittany's mark is well known in the
Centre County region, thus supporting a finding that the mark is strong.  (Id. ¶ 10.)  Furthermore,
the fact that the medical services offered by Nittany are essentially the same as those provided by
Mount Nittany weighs heavily in favor of a finding of consumer confusion.  The Court is
satisfied that use of the Nittany mark is likely to cause consumer confusion with Mount

Nittany's marks.  Thus, the allegations in Mount Nittany's complaint are sufficient to support

claims for: (1) trademark infringement under 15 U.S.C. § 1141(1); (2) false designation of origin

and unfair competition under 15 U.S.C. § 1125(a); and (3) trademark infringement, trade name

infringement, and unfair competition under Pennsylvania common law.

## II.     INJUNCTIVE RELIEF

Mount Nittany has requested a permanent injunction, barring Nittany from continuing its

infringing conduct.  "A permanent injunction issues to a party after winning on the merits and is

ordinarily granted upon a finding of trademark infringement."  Lermer Germany GmbH v.

Lermer Corp., 94 F.3d 1575, 1577 (Fed. Cir. 1996).  A plaintiff seeking a permanent injunction

must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at

law, such as monetary damages, are inadequate to compensate for that injury; (3) that,

considering the balance of hardships between the plaintiff and defendant, a remedy in equity is

warranted; and (4) that the public interest would not be disserved by a permanent injunction."

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

First, Mount Nittany has suffered irreparable harm due to the finding that Nittany's mark

creates a likelihood of confusion.  See Citizens Fin. Group, Inc. v. Citizens Nat'l Bank of Evans

City, 383 F.3d 110, 125 (3d Cir. 2004); Shields v. Zuccarini, 254 F.3d 476, 486 (3d Cir. 2001); S

& R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 378 (3d Cir. 1992) ("[T]rademark infringement

amounts to irreparable injury as a matter of law.").  Furthermore, an award of damages would be

inadequate to compensate for the consumer confusion that may arise if Nittany were to continue

using the Nittany mark, and may not be sufficient to deter Nittany's trademark infringement.

See Louis Vuitton Malletier, S.A. v. Veit, 211 F. Supp. 2d 567, 585 (E.D. Pa. 2002).

Additionally, damages from ongoing infringement would be difficult to determine.  See A.O.

Smith Corp. v. Fed. Trade Comm'n, 530 F.2d 515, 525 (3d Cir. 1976).

Next, the balance of hardships clearly supports the granting of a permanent injunction.

Any injury that Nittany would suffer as a result of a permanent injunction is "discounted by the

fact that [Nittany] brought that injury upon itself."  Novartis Consumer Health, Inc. v. Johnson &

Johnson–Merck Consumer Pharm. Co., 290 F.3d 578, 596 (3d Cir. 2002); see also Kos

Pharmaceuticals, Inc. v. Andrx Corp., 369 F.3d 700, 728 (3d Cir. 2004); Apple Computer, Inc. v.

Franklin Computer Corp., 714 F.2d 1240, 1255 (3d Cir. 1983).

Finally, the public interest in protecting registered trademarks supports the granting of a

permanent injunction in this case.  "Public interest can be defined a number of ways, but in a

trademark case, it is most often a synonym for the right of the public not to be deceived or

confused."  Opticians Ass'n of Am. v. Independent Opticians of Am., 920 F.2d 187, 197 (3d Cir.

1990).  Beyond the interest in preventing confusion to consumers, the "public interest is

advanced by recognition of property interests in trademarks."  Bill Blass, Ltd. v. SAZ Corp., 751

F.2d 152, 156 (3d Cir. 1984).  Thus, the Court will grant permanent injunctive relief in favor of

Mount Nittany.

In its proposed order (Doc. No. 17-1), Mount Nittany requests – in addition to an

injunction against future infringement – that Nittany be required to file a report in writing under

oath setting forth the manner and form in which it has complied with the injunction, and that

Nittany deliver all of its stationary, business cards, and any other materials that infringe on

Mount Nittany's mark to Mount Nittany for destruction.  First, whether to order a written report

lies within the Court's sound discretion under 15 U.S.C. § 1116(a).  Because Nittany has, to date,

failed to respond to Mount Nittany's allegations, the Court finds that an order requiring Nittany

to report on its compliance is necessary to assure such compliance.

However, the Court finds that a provision requiring Nittany to turn over all of its

infringing articles for destruction is unnecessary. Under 15 U.S.C. § 1118, the Court "may order

that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the

possession of the defendant, bearing the registered mark or . . . the word, term, name, symbol,

device, combination thereof, designation, description, or representation that is the subject of the

violation . . . shall be delivered up and destroyed." Given the permanent injunction against all

future infringement and the provision requiring Nittany to submit a written report to the Court,

the Court finds that a provision requiring Nittany to turn all infringing material over for

destruction is unnecessary to protect Mount Nittany's interests. See U.S. Olympic Comm. v.

Tobyhanna Camp Corp., No. 3:10-cv-162, 2010 WL 4617429, at *4 (M.D. Pa. Nov. 4, 2010).

## III.    COSTS

Mount Nittany requests that Nittany pay its costs in connection with this action, due to

Nittany's unresponsiveness and pursuant to 15 U.S.C. § 1117(a). A prevailing plaintiff in a

trademark case, whose mark has been federally registered, is entitled to recovery "the costs of

the action." 15 U.S.C. § 1117(a); Fed. R. Civ. P. 54(d). Included among these costs are filing

fees, the costs of making copies, and docket fees. 28 U.S.C. § 1920. While the prevailing party

is presumed to be entitled to costs, that party bears the burden of showing that a particular cost

should be taxed. Reger v. Nemours Foundation, Inc., 599 F.3d 285, 288 (3d Cir. 2010); U.S.

Olympic Comm., 2010 WL 4617429, at *5. Here, Mount Nittany has not submitted evidence

from which the Court can determine whether each cost is recoverable. Thus, the Court cannot

award costs at the present time, but will permit Mount Nittany to submit additional evidence within thirty days from the date of this order so that costs can be taxed.

## IV.     CONCLUSION

Mount Nittany has shown that it is entitled to default judgment, and that it is entitled to a permanent injunction.  The Court will grant Mount Nittany's motion (Doc. No. 16) in part, and deny it in part.  The Court will grant Mount Nittany's request for a permanent injunction, enjoining Nittany from future infringement and requiring Nittany to submit a written report, under oath, detailing the manner and form in which it is complying with the permanent injunction.  The Court will, however, deny Mount Nittany's request for an injunction requiring Nittany to turn over for destruction any infringing articles.  The Court will hold in abeyance Mount Nittany's request for costs.  An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MOUNT NITTANY MEDICAL CENTER,** | **:** | |
| **Plaintiff** | **:** | **No. 4:11-cv-622** |
| | **:** | |
| **v.** | **:** | **(Chief Judge Kane)** |
| | **:** | |
| **NITTANY URGEN CARE, P.C.,** | **:** | |
| **Defendant** | **:** | |

## <u>ORDER</u>

**AND NOW**, on this 22nd day of November 2011, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff Mount Nittany's motion for default judgment (Doc. No. 16) is **GRANTED IN PART** and default judgment is entered in favor of Plaintiff and against Defendant Nittany as follows.

2. Beginning on or after a transition period not to exceed thirty days from the date hereof, Defendant Nittany and its respective associates, agents, servants, employees, officers, directors, incorporators, representatives, successors, assigns and attorneys and all persons in active concert or participation with them (collectively "Defendant Nittany"), are enjoined and restrained from:

    (a) representing by words or act, or by failure to act, that the services advertised, promoted, offered for sale, sold or distributed by Defendant Nittany are affiliated, associated, authorized, sponsored, or endorsed by, or otherwise connected with Mount Nittany, including, by using the word "Nittany" in any trade name or service mark in connection with medical or health care services;

    (b) using, publishing or causing the use or publication of any signs, stationery, slogans, internet domain names, email addresses, website meta tags, advertisements, business cards, promotional publications, uniforms, designs, logos, forms or other printed or electronic matter or materials which use or include the word "Nittany," or any other colorable imitations, abbreviations or other terms confusingly similar to Plaintiff's Mount Nittany® Mark;

9

(c)     making any statement or representation or acting in any manner which is likely to lead the public or individual members of the public to believe that Defendant Nittany is, or was, in any manner directly or indirectly associated with, or licensed, authorized, or approved by or acting on behalf of Plaintiff Mount Nittany, or to believe that any services offered by Defendant Nittany is associated with Plaintiff Mount Nittany or is being offered by Plaintiff Mount Nittany;

(d)     using, in any market in connection with medical or heath care services, as a trade name or as the name of a corporation or any business entity, any name that includes Plaintiff's trade name and service mark "Mount Nittany" or "Nittany," or colorable imitations thereof, or any other confusingly similar term, and ordering Defendant Nittany to cancel with all applicable and appropriate governmental agencies any corporate name, fictitious or trademark or service mark registration that includes either "Mount Nittany" or "Nittany," or colorable imitations thereof or any other confusingly similar term;

(e)     committing any act that infringes Plaintiff Mount Nittany's service marks or trade name or which constitutes unfair competition against Plaintiff Mount Nittany or which constitutes a violation of 15 U.S.C. § 1125(a);

(f)     any other conduct that causes, or is likely to cause, confusion, mistake, deception or misunderstanding as to the source, affiliation, connection or association of Defendant Nittany's services;

(g)     purchasing or using any form of advertising, including use of key-words or meta tags in internet advertising containing Plaintiff's "Mount Nittany" service mark or any mark incorporating Plaintiff's "Mount Nittany" service mark, "Nittany," or colorable imitations thereof or any confusingly similar mark; and

(h)     otherwise unfairly competing with Plaintiff Mount Nittany in any manner.

2.      Defendant Nittany shall file with this court and serve on Plaintiff Mount Nittany, within thirty days of this order, a report, in writing and under oath, setting forth in detail the manner and form in which Defendant Nittany has complied with this permanent injunction;

3.      Plaintiff Mount Nittany's request pursuant to 15 U.S.C. § 1118 that Defendant Nittany turn over any infringing articles for destruction is **DENIED**.

4.      Plaintiff Mount Nittany's request for costs is **HELD IN ABEYANCE**.  Plaintiff

Mount Nittany is directed to submit evidence supporting its request for costs within thirty days.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania